# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **LORIE ANN SMITH,** ) | | |
| Plaintiff ) | | |
| ) | | |
| v. ) | Civil Action No. 1:17cv00023 | |
| ) | | |
| **NANCY A. BERRYHILL,** ) | **MEMORANDUM OPINION** | |
| Acting Commissioner of ) | | |
| Social Security, ) | | |
| Defendant ) | By: Pamela Meade Sargent | |
| ) | United States Magistrate Judge | |

*I. Background and Standard of Review*

Plaintiff, Lorie Ann Smith, ("Smith"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), determining that she was not eligible for disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423 (West 2011 & Supp. 2018). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). This case is before the undersigned magistrate judge upon transfer pursuant to the consent of the parties under 28 U.S.C. § 636(c)(1).

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the

case before a jury, then there is "substantial evidence.""" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Smith filed an application for DIB on June 24, 2013, alleging disability as of May 22, 2013, based on back problems; anxiety; chronic obstructive pulmonary disease, ("COPD"); and osteoporosis in both knees. (Record, ("R."), at 189-90, 207.) The claim was denied initially and upon reconsideration. (R. at 98-100, 104-06, 110-12, 114-16.) Smith then requested a hearing before an administrative law judge, ("ALJ"). (R. at 117.) Hearings were held on October 30, 2015, and April 11, 2016, at which Smith was represented by counsel. (R. at 42-70.)

By decision dated April 27, 2016, the ALJ denied Smith's claim. (R. at 23-35.) The ALJ found that Smith meets the nondisability insured status requirements of the Act for DIB purposes through December 31, 2018. (R. at 25.) The ALJ also found that Smith had not engaged in substantial gainful activity since May 22, 2013, the alleged onset date. (R. at 25.) The ALJ found that the medical evidence established that Smith suffered from severe impairments, namely COPD; osteoarthritis of the knees; degeneration of the lumbar spine; and obesity, but he found that Smith did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 25, 31.) The ALJ found that Smith had the residual functional capacity to perform light work[1] except that she was able to stand and/or walk for only four hours; sit for six hours; occasionally climb ramps and stairs; never climb ropes, ladders or scaffolds; and never work around moderate exposure to hazards,

---

[1] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, she also can perform sedentary work. *See* 20 C.F.R. § 404.1567(b) (2017).

vibration, fumes, other respiratory irritants or extreme cold. (R. at 31.) The ALJ found that Smith was unable to perform her past relevant work. (R. at 34.) Based on Smith's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ also found that jobs existed in significant numbers in the national economy that Smith could perform, including jobs as an entry-level office helper, a cashier in a small shop and a mail sorter. (R. at 34-35.) Thus, the ALJ found that Smith was not under a disability as defined under the Act, and was not eligible for benefits. (R. at 35.) *See* 20 C.F.R. § 404.1520(g) (2017).

After the ALJ issued his decision, Smith pursued her administrative appeals, (R. at 17-19), but the Appeals Council denied her request for review. (R. at 1-6.) Smith then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981 (2017). The case is before this court on the Commissioner's motion for summary judgment filed January 16, 2018.[2]

## II. Facts

Smith was born in 1963, (R. at 189), which, at the time of the ALJ's decision, classified her as a "person closely approaching advanced age" under 20 C.F.R. § 404.1563(d). She has an eleventh-grade education and past relevant work experience as a school bus driver, a cashier and a sales clerk. (R. at 52, 55, 208-09.) Smith testified at her hearing that she was prescribed oxygen, which she used day and night.[3] (R. at 46.) She stated that, in addition to using oxygen, she used a

---

[2] Rather than file a motion for summary judgment, Smith filed a Memorandum In Support Of Plaintiff's Claim For Social Security Disability Benefits. (Docket Item No. 16.)

[3] Smith was not on oxygen at her hearing. (R. at 46.) She stated that she planned to see her doctor after the hearing to have her oxygen level checked. (R. at 46.) Smith stated that her

breathing treatment machine and two inhalers. (R. at 47.) Smith stated that she used a rescue inhaler two to three times a day. (R. at 47.) She stated that she had never been a smoker, but had smoked only a couple of cigarettes.[4] (R. at 48.) Smith stated that the last time she smoked a cigarette was in 2014. (R. at 49.) She stated that she got along well with people, including supervisors. (R. at 52.)

Cathy Sanders, a vocational expert, also was present and testified at Smith's hearing. (R. at 55-58, 284-85.) She was asked to consider a hypothetical individual of Smith's age, education and work history, who had the residual functional capacity to perform light work; who could stand and/or walk up to four hours in an eight-hour workday and sit up to six hours in an eight-hour workday; who could occasionally climb ramps and stairs; who could not climb ropes, ladders or scaffolds or work around moderate exposure to hazards, vibrations, fumes and other respiratory irritants; and who could not work around concentrated exposure to extreme heat and cold. (R. at 56.) Sanders stated that such an individual could perform jobs that existed in significant numbers in the national economy, including jobs as an entry-level office helper, a cashier in a small shop and a mail sorter. (R. at 56.) Sanders further testified that the same hypothetical individual, but who was limited to sedentary[5] work, could perform jobs that existed in significant numbers in the national economy, including jobs as an entry-level office helper, a charge

---

oxygen level had to be less that 80 percent in order for her insurance to pay for a travel oxygen canister. (R. at 46.) She stated that she was able to be off of the oxygen for up to 40 minutes before her oxygen level began to decrease. (R. at 46.)

[4] It is noted that Smith repeatedly reported to her primary care physician that she smoked cigarettes daily. (R. at 298, 303, 309, 319, 323, 327-28, 336-37, 371, 388, 402, 426, 437, 443, 449, 459, 465, 474, 519.)

[5] Sedentary work involves lifting items weighing up to 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking or standing is often necessary in carrying out job duties. Jobs are sedentary if walking or standing are required occasionally and other sedentary criteria are met. *See* 20 C.F.R. § 404.1567(a) (2017).

account clerk and a surveillance monitor. (R. at 57.) Sanders stated that the jobs previously identified would be eliminated should the individual require a sit/stand option every 15 minutes. (R. at 58.) She stated that a person's need to have an oxygen tank with them at all time during the workday would be a medical accommodation that would have to be agreed upon according to the Americans with Disabilities Act. (R. at 58.) Sanders stated that an individual would be unable to retain a job should she be off task 11 percent or more of the workday. (R. at 58.)

In rendering his decision, the ALJ reviewed medical records from David Deaver, Ph.D., a state agency psychologist; Dr. Lewis Singer, M.D., a state agency physician; Holston Medical Group; HMG Gastroenterology – Kingsport; Sapling Grove Family Physicians; Dr. Marianne E. Filka, M.D.; Dr. William McCormick, M.D.; and Dr. Adel M. El Abbassi, M.D.

Smith received treatment from her primary care physician, Dr. William McCormick, M.D., from May 2010 through January 2016 for asthma; COPD; hypertension; knee osteoarthritis; back degeneration; panic disorder with agoraphobia; nicotine dependence; generalized anxiety disorder; GERD; and depression (R. at 297-355, 370-76, 380-97, 401-22, 425-78, 518-24.) During this time period, Smith's pulmonary examinations revealed mild shallow respirations, diffuse wheezing, decreased breath sounds and no respiratory distress. (R. at 299, 304, 309, 320, 330, 334, 339, 350, 372, 389, 404, 428, 439, 444, 451, 461, 467, 476.) Smith's oxygen saturation ranged between 93 and 99 percent. (R. at 299, 304, 308, 320, 334, 338, 342, 349, 353, 372, 404, 428, 442, 439, 444, 450, 460, 466, 476, 521.) She was prescribed inhalers and nebulizers. (R. at 405, 428, 442, 445-46, 452, 467.) Smith routinely reported that her hypertension, COPD, asthma, depression and anxiety were stable. (R. at 297, 318, 327, 336, 370, 401, 425, 436, 448, 458, 464, 473.) Dr. McCormick noted that Smith's symptoms of COPD,

hypertension, GERD and anxiety were stable with medications. (R. at 467, 476.) He reported that Smith's memory, attention, language, fund of knowledge and mood and affect were normal. (R. at 299, 304, 309, 320, 330, 339, 372, 389, 428, 439, 451, 461.)

In August 2013, Smith complained to Dr. McCormick of bilateral knee pain. (R. at 370-74.) She had decreased range of motion in both knees. (R. at 372.) On September 12, 2013, Smith complained of diarrhea. (R. at 388.) Dr. McCormick reported that Smith had a normal gait, full muscle strength in both the upper and lower extremities and normal muscle tone. (R. at 389.) He diagnosed lower abdominal pain, diarrhea and esophageal reflux. (R. at 389.) In December 2013, Smith reported to Dr. McCormick that her anxiety and panic attacks had improved. (R. at 401.)

Also, on September 12, 2013, Smith presented to Dr. Adel M. El Abbassi, M.D., to establish treatment. (R. at 361-64.) Smith reported that she smoked cigarettes. (R. at 362.) She denied anxiety and depression. (R. at 362.) Pulmonary examination showed quiet, even and easy respiratory effort with no wheezes or crackles. (R. at 363.) Smith's oxygen saturation level was 98 percent.[6] (R. at 363.) Dr. Abbassi reported that Smith had a normal attention span and ability to concentrate; she had a normal posture and gait; she had normal sensation and coordination; and she had intact deep tendon reflexes in the upper and lower extremities. (R. at 363.) A spirometry test showed significant reversibility with active asthma. (R. at 364, 366.) A pulmonary function test showed Smith's forced expiration volume one second, ("$FEV_1$"), was 2.65 percent, 82 percent of the predicted $FEV_1$. (R. at 366.) The $FEV_1$ and forced vital capacity, ("FVC"), was

---

[6] Dr. Abbassi did not report that Smith was using oxygen during this office visit.

0.73 percent, 97 percent of the predicted $FEV_1/FVC$. (R. at 366.) Smith's lung age was assessed at 53. (R. at 366.) Dr. Abbassi diagnosed COPD, asthma, GERD and tobacco abuse. (R. at 361.) Smith was advised to stop smoking, to walk and exercise regularly and to eat healthy foods. (R. at 368.)

On December 4, 2013, David Deaver, Ph.D., a state agency psychologist, completed a Psychiatric Review Technique form, ("PRTF"), finding that Smith had mild restrictions on her activities of daily living, experienced only mild difficulties in maintaining social functioning, experienced no difficulties maintaining concentration, persistence or pace and had experienced no repeated episodes of extended-duration decompensation. (R. at 79.)

Also, on December 4, 2013, Dr. Lewis Singer, M.D., a state agency physician, found that Smith had the residual functional capacity to perform light work. (R. at 80-82.) He found that Smith could occasionally climb ramps and stairs, stoop, kneel, crouch and crawl. (R. at 81.) Dr. Singer further found that Smith could never climb ladders, ropes or scaffolds, but that her ability to balance was unlimited. (R. at 81.) No manipulative, visual or communicative limitations were noted. (R. at 81.) He found that Smith must avoid concentrated exposure to temperature extremes, vibration, fumes, odors, dusts, gases and poor ventilation. (R. at 81.)

By letter dated January 17, 2014, Dr. McCormick stated that Smith was disabled due to COPD, anxiety/depression and other co-morbidities. (R. at 424.) In November 2014, Smith complained of back and knee pain. (R. at 458-63.) Dr. McCormick reported that Smith was using a cane, and examination revealed that she had decreased range of motion in her neck and lumbar spine. (R. at 461.) X-rays of Smith's lumbar spine showed mild degenerative disc disease at the L3-S1

levels with facet arthrosis in the lower lumbar spine and degeneration of the cervical disc. (R. at 456-57.) On January 22, 2015, Smith was seen for evaluation of Methicillin-resistant Staphylococcus aureus, ("MRSA"). (R. at 448-53.) She reported that her panic attacks were stable. (R. at 448.) Dr. McCormick reported that Smith was using a cane, and examination revealed that she had decreased range of motion in her legs. (R. at 451.) In March 2015, Smith was prescribed oxygen at bedtime.[7] (R. at 442.) On May 12, 2015,[8] Dr. McCormick completed a Medical Source Statement (Physical), indicating that Smith could not be expected to work an eight-hour workday and 40-hour workweek on a regular basis without missing more than two days of work a month due to her disabilities. (R. at 484-85.) He did not elaborate on Smith's abilities, stating that a functional capacity evaluation would need to be performed to make such determination. (R. at 484.) Dr. McCormick did, however, opine that Smith had a reasonable medical need to lie down a "few times" a day due to fatigue and that she would need to take unscheduled breaks during an eight-hour workday beyond the normal 15-minute break, twice a day. (R. at 485.)

On August 12, 2015, Dr. McCormick completed a Medical Source Statement (COPD), indicating that Smith met the "GOLD Classification: Stage III (severe) COPD,"[9] which indicated greater shortness of breath, reduced exercise capacity and repeated exacerbations which would have an impact on Smith's

---

[7] It was noted that supplemental oxygen (qHS) was part of Smith's treatment. (R. at 442.) The abbreviation q.h.s. is from Latin *quaque hora somni*, meaning every bedtime. *See* https://medical-dictionary.thefreedisctionary.com/q.h.s (last visited July 18, 2018).

[8] Dr. McCormick noted that a mental capacity evaluation would need to be performed to determine any mental limitations that Smith may have. (R. at 479-81.)

[9] The Global Initiative for Chronic Obstructive Lung Disease, ("GOLD"), system uses the FEV1 test to categorize the severity of COPD into stages. *See* https://lunginstitute.com/blog/gold-copd-stages/ (last visited July 18, 2018).

quality of life. (R. at 482-83.) Dr. McCormick originally indicated that supplemental oxygen had not been prescribed; however, he changed the answer to indicate that supplemental oxygen had been prescribed.[10] (R. at 483.) He opined that Smith could stand for 30 minutes without interruption; would have no sitting limitations; could lift items weighing up to 10 pounds occasionally and frequently; and could not tolerate dust, smoke or fumes. (R. at 483.) Dr. McCormick stated that Smith's limitations would preclude all full-time work. (R. at 483.)

On August 20, 2015, Smith complained of heaviness in her chest, shortness of breath, nausea and edema. (R. at 436-41.) Smith reported that her anxiety was doing well. (R. at 436.) Dr. McCormick reported that Smith had moderate respiratory distress, shallow respirations, scattered wheezing and decreased breath sounds. (R. at 439.) Chest x-rays showed no acute cardiopulmonary disease, and an ECG was normal. (R. at 435, 439.) On August 27, 2015, a stress test was normal. (R. at 431-32.) On September 21, 2015, Smith requested to try an antidepressant that did not cause weight gain since her depression had worsened. (R. at 425-30.) She also asked that Dr. McCormick "change [the] answer on [the] form she has re[garding] O2." (R. at 425.) Smith reported that she needed oxygen "daily and continuous." (R. at 425.) Smith's oxygen saturation level was 97 percent. (R. at 428.) Pulmonary examination showed no respiratory distress; normal respiratory rhythm and effort; scattered wheezing; and decreased breath sounds. (R. at 428.) This is the first time that Smith reported needing oxygen all the time. Dr. McCormick reported that Smith was using a cane. (R. at 428.) On January 6, 2016, Smith complained of worsened anxiety. (R. at 518-24.) Dr. McCormick reported that Smith had moderate respiratory distress, shallow respirations, diffuse wheezing and decreased breath sounds. (R. at 521.)

---

[10] As indicated above, Smith was prescribed oxygen at bedtime in March 2015. (R. at 442.)

On December 16, 2015, Dr. Marianne E. Filka, M.D., examined Smith. (R. at 486-90.) Smith reported that she had been on oxygen for one year. (R. at 486.) She stated that she had never been a "steady smoker, but occasionally she would 'pick up cigarettes.'" (R. at 486.) Smith reported having anxiety attacks with blacking out spells two to three times a week. (R. at 486.) She stated that she did not take medication for joint or back pain. (R. at 486.) Dr. Filka reported that Smith was neat and clean; she had a pleasant demeanor; logical thoughts; depressed mood and affect; and appropriate attention and concentration. (R. at 488-89.) Pulmonary examination revealed wheezes bilaterally, worse with coughing, but present with deep breathing. (R. at 489.) Dr. Filka described the wheezes as scattered and associated with prolonged expiratory phase. (R. at 489.) Dr. Filka reported that Smith's range of motion was full throughout; her strength was 4/5 in both upper and lower extremities; she had tenderness in both knees, the left hip, the right carpometacarpal joint and both elbows; she had soft tissue tenderness in the right upper arm, the right forearm, both thighs and both calf muscles; her gait was normal and done with no assistive device; postural changes were done with slowness and difficulty getting on and off the examination table, from sitting to lying or lying to sitting and sitting to standing and bending; she had soft tissue tenderness in spinous processes and tenderness throughout the cervical area and into both trapezia; tenderness in the SI joints; negative bilateral straight leg raising tests; and range of motion of the cervical spine was normal. (R. at 489.) A pulmonary function test showed a very severe obstruction with low vital capacity, and Smith's lung age was assessed at 84. (R. at 491.) It was noted that Smith gave only a "fair effort" during testing. (R. at 491.)

Dr. Filka opined that, due to asthma and COPD, Smith should avoid all pulmonary irritants at the workplace and be allowed to use her oxygen at a safe location in the work place. (R. at 490.) She opined that, due to chronic

polyarthralgias and cervical and lumbar pain, Smith should lift, push, pull and carry no more than 30 pounds occasionally and 20 pounds frequently; she should alternate her postures among sitting, standing and walking as needed; she should not climb ladders or scaffolds; she could occasionally climb stairs and ramps; and she should avoid operating heavy, vibrating equipment. (R. at 490.) Dr. Filka opined that, due to Smith's blackout spells, she should avoid moving mechanical equipment and unprotected heights. (R. at 490.)

Dr. Filka completed a medical assessment, indicating that Smith had the residual functional capacity to frequently lift and carry items weighing up to 20 pounds and occasionally lift and carry items weighing up to 30 pounds. (R. at 511-16.) She opined that Smith would need to alternate posture as needed for pain relief. (R. at 512.) She noted that Smith did not require an assistive device to ambulate. (R. at 512.) Dr. Filka opined that Smith could occasionally climb stairs and ramps; never climb ladders or scaffolds; never work around unprotected heights, moving mechanical parts, dust, odors, fumes, pulmonary irritants and vibrations; and never operate a moving vehicle. (R. at 514-15.)

### III. Analysis

The Commissioner uses a five-step process in evaluating DIB claims. *See* 20 C.F.R. § 404.1520 (2017); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. § 404.1520. If the Commissioner finds

conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 404.1520(a) (2017).

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Smith argues that the ALJ's residual functional capacity finding is not based on substantial evidence. (Memorandum In Support Of Plaintiff's Claim For Social Security Disability Benefits, ("Plaintiff's Brief"), at 12-15.) In particular, she argues that the ALJ erred by failing to limit her residual functional capacity to accommodate occasional oxygen use while working and the effects that an oxygen tank would have on her abilities to walk, to ambulate and to work certain jobs identified by the vocational expert. (Plaintiff's Brief at 12-15.) Smith also argues that the ALJ erred by failing to consider evidence that she needed a cane to ambulate, thus, failing to include this limitation in his hypothetical to the vocational expert. (Plaintiff's Brief at 15-17.) Finally, Smith argues that the ALJ failed to give controlling weight to her treating physician, Dr. McCormick. (Plaintiff's Brief at 18-19.)

Smith argues that the ALJ erred by failing to properly consider Dr. McCormick's January 17, 2014, opinion. (Plaintiff's Brief at 18-19.) Based on my

review of the record, I find this argument unpersuasive. While the ALJ, in general, is required to give more weight to opinion evidence from treating sources versus nontreating medical sources, the ALJ is not required to give controlling weight to the opinions of a treating physician. *See* 20 C.F.R. § 404.1527(c) (2017). An opinion from a treating physician will be accorded significantly less weight if it is "not supported by clinical evidence or if it is inconsistent with other substantial evidence…." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996).

The ALJ noted that he gave no weight to Dr. McCormick's statements as to Smith's residual functional capacity. (R. at 33, 424.) The ALJ found that Dr. McCormick's opinions were "clearly overestimates" of Smith's work-related limitations. (R. at 33.) He found that Dr. McCormick's examination findings revealed that Smith had normal sensation, no wheezes, no crackles, normal coordination, intact deep tendon flexes and normal cardiovascular findings. (R. at 33.) While Dr. McCormick noted that Smith's symptoms of COPD, hypertension, GERD and anxiety were stable with medications, (R. at 467, 476), Smith's pulmonary examinations revealed mild shallow respirations, diffuse wheezing, decreased breath sounds and no respiratory distress. (R. at 299, 304, 309, 320, 330, 334, 339, 350, 372, 389, 404, 428, 439, 444, 451, 461, 467, 476.) She was prescribed inhalers, nebulizers and supplemental oxygen. (R. at 405, 428, 442, 445-46, 452, 467, 483.) In addition, Dr. Filka noted that Smith's pulmonary examination revealed wheezes bilaterally, a pulmonary function test showed a very severe obstruction with low vital capacity, and Smith's lung age was assessed at 84. (R. at 489, 491.) Dr. Filka found that Smith should avoid all pulmonary irritants at the workplace and be allowed to use her oxygen at a safe location in the workplace. (R. at 490.) The ALJ noted that he was giving partial weight to Dr. Filka's opinion; however, the ALJ failed to mention what, if any, weight he was giving to her opinion that Smith be allowed to use her oxygen at a safe location in

the workplace. (R. at 33.) Based on this, I do not find that substantial evidence exists to support the ALJ's weighing of the medical evidence.

Smith also argues that the ALJ erred by failing to limit her residual functional capacity to accommodate occasional oxygen use while working and the effects that an oxygen tank would have on her abilities to walk, to ambulate and to work certain jobs identified by the vocational expert. (Plaintiff's Brief at 12-15.) The ALJ noted the evidence of Smith's oxygen use in the medical records and Smith's testimony. (R. 32-33.) However, the ALJ did not limit Smith's residual functional capacity to accommodate even occasional oxygen use or include any such limitation in the hypotheticals he presented to the vocational expert. (R. 31, 55–58.) The vocational expert testified that a person's need to have an oxygen tank with them at all times during the workday would be a medical accommodation that would have to be agreed upon according to the Americans with Disabilities Act. (R. at 58.) The ALJ did not explain why he did not limit Smith to jobs that would accommodate oxygen use; nor did he find that Smith did not actually need to use supplemental oxygen. (R. 31-33.) The ALJ noted that, although Smith testified at her hearing that she used oxygen during the day and night, she did not attend the hearing with oxygen nor did she provide a satisfactory reason for such. (R. at 32.) The ALJ also noted that Smith had not been referred to a pulmonary specialist; gave only fair effort on pulmonary function testing; and that she failed to display any breathing difficulties at the hearing. (R. at 32.) Because the ALJ failed to make any specific findings regarding Smith's oxygen use, it is unclear whether the ALJ also rejected Smith's allegations that she needs oxygen. *See Andrews v. Comm'r of Sec. Sec.*, 2012 WL 4194656, at *8 (M.D. Fla. Sept. 19, 2012).

The ALJ must account for all of the limitations caused by the claimant's treatment in assessing the claimant's residual functional capacity. Here, the

residual functional capacity did not include Smith's documented need for oxygen, and the ALJ did not present a hypothetical to the vocational expert that included accommodation for oxygen use. If the ALJ thought that Smith required oxygen to function at work, he must have included an accommodation for oxygen use in the residual functional capacity determination and hypothetical to the vocational expert. *See, e.g.*, *Carnaghi v. Astrue*, 886 F. Supp. 2d 861, 870 (N.D. Ill. 2012); *Andrews*, 2012 WL 4194656, at *4, *8; *Bogan v. Astrue*, 2010 WL 5391196, at *8–10 (N.D. Ill. Dec. 20, 2010); *Meade v. Astrue*, 2009 WL 2160689, at *2 (S.D. W. Va. July 14, 2009). The ALJ's failure to make any findings on these issues was error.

There is no evidence in the record that businesses employing people in jobs the ALJ found that Smith could perform would accommodate an employee who needed to use supplemental oxygen, and other cases suggest some disagreement among vocational experts on the question. *Compare Meade*, 2009 WL 2160689, at *2 (vocational expert testified that sporadic use of oxygen precluded all employment); *Andrews*, 2012 WL 4194656, at *4 (vocational expert testified that use of oxygen for six of eight hours in a day precluded substantial gainful employment); *Bogan*, 2010 WL 5391196, at *3 (vocational expert testified that use of portable oxygen precluded competitive employment "unless an employer were willing to work out a special accommodation"), *with Whitt v. Comm'r of Soc. Sec.*, 2013 WL 4784991, at *38 (N.D. W. Va. Sept. 6, 2013) (vocational expert testified that significant number of jobs existed meeting RFC that accommodated use of oxygen "as might be necessary during or throughout the workday"); *Edwards v. Colvin*, 2013 WL 4666344, at *12 (E.D. Mo. Aug. 30, 2013) (vocational expert testified that jobs existed in significant numbers that would accommodate claimant's need for oxygen); *Pendleton v. Comm'r of Soc. Sec.*, 2011 WL 7070519, at *6–7 (S.D. Ohio Dec. 23, 2011) (vocational expert testified that use of

oxygen tank would preclude work above sedentary level). Because there is no evidentiary basis in this record to support a finding that a person requiring supplemental oxygen could perform the jobs identified by the vocational expert, I cannot conclude that the ALJ's decision is supported by substantial evidence.

It is for all of the above-stated reasons that I find that substantial evidence does not support the Commissioner's decision to deny benefits, and I will vacate the Commissioner's decision denying benefits and remand the case to the Commissioner for further consideration with respect to Smith's pulmonary impairments. An appropriate order will be entered.

DATED:   July 18, 2018.

s/ *Pamela Meade Sargent*<br>UNITED STATES MAGISTRATE JUDGE